BROWN, Appellant,

v.

AKRON BEACON JOURNAL PUBLISHING COMPANY et al., Appellees.

[Cite as *Brown v. Akron Beacon Journal Publishing Co.* (1991), 81 Ohio App.3d 135.]

Court of Appeals of Ohio,
Summit County.

No. 15092.

Decided Oct. 2, 1991.

*John L. Wolfe,* for appellant.

*Ronald S. Kopp* and *Amie L. Bruggeman,* for appellees.

---

CACIOPPO, Judge.

Plaintiff-appellant, Clifford F. Brown, is a former justice of the Supreme Court of Ohio. On October 21, 1987, he filed a civil action, *pro se,* in the Summit County Court of Common Pleas against defendants-appellees, the Akron Beacon Journal Publishing Company and reporter Mary Grace Poidomani (collectively "Beacon Journal"). The complaint for libel and slander alleged that an article written by Poidomani, dated October 26, 1986, was false and defamatory. Justices Andy Douglas and Robert E. Holmes were also named as defendants on the grounds that they supplied false information to the Beacon Journal.

On December 15, 1987, Justices Douglas and Holmes moved to dismiss the complaint pursuant to Civ.R. 12(B). Needing counsel, Justice Brown secured the services of Michigan attorney Neal Bush. A lengthy memorandum opposing the motion to dismiss was then prepared and filed.

The Beacon Journal moved for summary judgment on June 20, 1988. No response was offered by Justice Brown. On August 15, 1988, the claims against Justices Douglas and Holmes were dismissed. Shortly thereafter, the common pleas judge who had been presiding over the proceedings was elected to the Ohio Court of Appeals and a new judge was assigned to the case. On May 17, 1989, summary judgment was granted in favor of the Beacon Journal. No direct appeal of this final order was taken.

Several months later, Justice Brown hired new counsel and a motion to vacate the entry of summary judgment was filed on December 6, 1989. A memorandum in opposition was promptly tendered by the Beacon Journal. The motion was overruled by the court on March 29, 1991. This appeal raising four assignments of error follows:

## ASSIGNMENT OF ERROR I

"The trial court erred in deciding the motion for summary judgment without fixing a time for hearing, whether oral or non-oral, as provided by Civil Rule 56(C) and without notifying plaintiff or his counsel of the time of hearing as provided by Summit County Local Rule 7.14."

Justice Brown was served a copy of the Beacon Journal's motion for summary judgment on the date it was filed. Loc.R. 7.14(a) of the Court of Common Pleas of Summit County, General Division (hereinafter "Loc.R. 7.14[a]"), instructs that:

" * * * Within ten (10) days after receipt of a copy of a motion, opposing counsel shall prepare and file a reply to the motion setting forth statements relied upon in opposition. Every motion so filed shall be deemed as submitted and shall be determined upon the written statements of reasons in support or opposition, as well as the citations of authorities. At any time after fourteen (14) days from the date of filing of the motion, the assigned judge may rule upon the motion." See *Chiampo v. Williams* (Sept. 18, 1991), Summit App. No. 14903, unreported, 1991 WL 184826.

Contrary to these dictates, Justice Brown did not respond to the request for summary judgment within the period allotted. The trial court nevertheless withheld its ruling on the matter for approximately eleven months before finally finding in favor of the Beacon Journal.

Justice Brown maintains that prior to rendering a decision, the trial court was obliged to set a hearing date (despite his failure to request such) as well as provide further notice that a ruling on the matter was imminent (irrespective of Loc.R. 7.14[a]). Only then, he insists, could he have known when his response was due. Apparently, some courts have construed Civ.R. 56(C) to require this peculiar format. *Griffith v. Wackenhut Corp.* (July 6, 1988), Hamilton App. No. C–870836, unreported, 1988 WL 71609; *Gen. Motors Acceptance Corp. v. Stratton* (June 28, 1989), Highland App. No. 694, unreported, 1989 WL 74871.

■ Be that as it may, this cumbersome approach has never been practiced in this jurisdiction. *Cusack v. Ohio Bell Tel. Co.* (Feb. 10, 1982). Summit App. No. 10366, unreported, at 3, 1982 WL 4874; *Shirey v. Over* (July 20, 1983), Summit App. No. 11142, unreported at 4–5, 1983 WL 4162; *Falls Savings Bank v. Cadwell* (Jan. 31, 1991), Summit App. No. 14644, unreported, at 8–9, and at fn. 2, 1991 WL 11372. We prefer to continue our adherence to the straightforward and uniform procedure codified in Loc.R. 7.14. Whether a formal hearing is to be conducted is a matter left to the common pleas

court's sound discretion, Loc.R. 7.14(b), but, if held, sufficient notice to all parties is required, Loc.R. 7.14(c).

■ Justice Brown contends, in essence, that this local rule conflicts with Civ.R. 56(C), which states in part:

" * * * The motion shall be served at least fourteen days before the time fixed for hearing. The adverse party prior to the day of hearing may serve and file opposing affidavits. * * * "

Without question, clear and unambiguous provisions of the Ohio Rules of Civil Procedure may not be circumvented through local court rules. Section 5(B), Article IV, Ohio Constitution; Civ.R. 1; see *In re Appeal of Little Printing Co.* (1980), 70 Ohio App.2d 182, 24 O.O.3d 222, 435 N.E.2d 687.

■ We nevertheless adhere to our view that Loc.R. 7.14 duly augments, rather than thwarts, Civ.R. 56(C). Properly viewed, Civ.R. 56(C) does not demand a formal hearing as a prerequisite to summary judgment. *Gates Mills Invest. Co. v. Pepper Pike* (1978), 59 Ohio App.2d 155, 164, 13 O.O.3d 191, 196, 392 N.E.2d 1316, 1322. The "hearing" contemplated by the rule may involve as little as the submission of memoranda and evidentiary materials for the court's consideration. See *Geear v. Boulder Community Hosp.* (C.A.10, 1988), 844 F.2d 764, 766; *Anchorage Assoc. v. Virgin Islands Bd. of Tax Rev.* (C.A.3, 1990), 922 F.2d 168, 176 and fn. 8.[1] Moreover, nothing in Civ.R. 56(C) requires the trial court to set a "date certain" for the ruling and alert all parties that a decision is forthcoming. See *Daniels v. Morris* (C.A.5, 1984), 746 F.2d 271, 274–275; *Grigoleit Co. v. United Rubber, Cork, Linoleum & Plastic Workers of Am.* (C.A.7, 1985), 769 F.2d 434, 437–438. Consistent with Loc.R. 7.14, the non-moving party is entitled simply to sufficient notice of the filing of the motion, Civ.R. 5, and an adequate opportunity to respond, Civ.R. 56(C). Justice Brown does not deny that he was fully afforded these basic procedural guarantees.

This assignment of error is overruled.

## ASSIGNMENT OF ERROR II

"The trial court erred in holding that Neal Bush's neglect in responding to the summary judgment motion was imputed to his client, the plaintiff."

---

1. As the pertinent Staff Notes indicate, Civ.R. 56 was patterned after Fed.R.Civ.P. 56. Accordingly, federal case law may assist in the interpretation of Ohio summary procedures. *Williams v. Church* (1974), 37 Ohio St.2d 150, 151, 66 O.O.2d 311, 311, 309 N.E.2d 924, 925; *Grau v. Kleinschmidt* (1987), 31 Ohio St.3d 84, 90, 31 OBR 250, 255, 509 N.E.2d 399, 404, fn. 8.

■ Justice Brown's motion for relief from judgment was based, in part, upon Civ.R. 60(B)(1), which provides:

"Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect * * *."

Civ.R. 60(B) attempts to strike a balance between the competing principles that litigation must be brought to an end and that justice should be done. *Colley v. Bazell* (1980), 64 Ohio St.2d 243, 248, 18 O.O.3d 442, 445, 416 N.E.2d 605, 609. The rule is a remedial measure and should be liberally construed so as to advance these objectives. *Id.* at 248, 18 O.O.3d at 445, 416 N.E.2d at 609; *Svoboda v. Brunswick* (1983), 6 Ohio St.3d 348, 351, 6 OBR 403, 405, 453 N.E.2d 648, 650. Even so, the trial court enjoys considerable discretion in resolving such matters. *Doddridge v. Fitzpatrick* (1978), 53 Ohio St.2d 9, 12, 7 O.O.3d 5, 6, 371 N.E.2d 214, 217; *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 20, 520 N.E.2d 564, 566. While courts should strive to decide cases upon their merits rather than upon technical grounds, Civ.R. 60(B) must not be employed to emasculate the procedural rules and time limits. *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 79, 514 N.E.2d 1122, 1125; *Gurkovich v. AAA Mobile Home Sales & Brokerage, Inc.* (1990), 70 Ohio App.3d 572, 573, 591 N.E.2d 821, 822.

■ In denying the motion for relief of judgment, the trial court concluded that Bush's neglect was inexcusable and Justice Brown—not the Beacon Journal—should bear the costs of his attorney's nonfeasance. This reasoning flows from the general rule, firmly established in Ohio, that "the neglect of a party's attorney will be imputed to the party for the purposes of Civ.R. 60(B)(1)." *GTE Automatic Elec., Inc. v. ARC Indus., Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph four of the syllabus; see, also, *Argo Plastic Prod. Co. v. Cleveland* (1984), 15 Ohio St.3d 389, 15 OBR 505, 474 N.E.2d 328, syllabus; *Griffey, supra,* 33 Ohio St.3d at 77, 514 N.E.2d at 1123; *Hunsicker v. Hunsicker* (Sept. 26, 1990), Summit App. No. 14606, unreported, at 4–5, 1990 WL 139830. As explained in a related context:

"There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have

'notice of all facts, notice of which can be charged upon the attorney.'" (Citation omitted.) *Link v. Wabash R.R. Co.* (1962), 370 U.S. 626, 633–634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734, 739–740; see, also, *Irwin v. Veterans Adm.* (1990), 498 U.S. 89, 92–93, 111 S.Ct. 453, 456, 112 L.Ed.2d 435, 442.

■  Justice Brown maintains, and we do not disagree, that *GTE Automatic* establishes a general rule and, in unusual cases, exceptions may be necessary to promote the objectives of Civ.R. 60(B).  In this vein, Justice Brown advances the proposition that an attorney's negligence cannot be imputed to the client whenever the former actively deceives the latter.  Bush conceded in his deposition that he had purposely misled Justice Brown into believing that a response to the motion for summary judgment had been timely filed.

Justice Brown cites no authority to support his proposed exception.  Unfortunately, circumstances such as those presented here are hardly novel as many careless attorneys rarely report, and frequently attempt to cover up, their mismanagement.  See, *e.g., Weir v. Needham* (1985), 26 Ohio App.3d 36, 26 OBR 205, 498 N.E.2d 175.

The result Justice Brown promotes, moreover, is paradoxical.  He would have this court relieve him completely of his responsibility for his attorney's incompetence due to the latter's extreme misconduct.  A similarly situated client who selected an equally inattentive—but more scrupulous—representative would still bear the costs of his counsel's neglect.

Not only would the exception Justice Brown proposes reward the party who hires the worst attorney, it would also lessen the damage for which that attorney is ultimately liable by allowing the underlying lawsuit to proceed.  The negligent lawyer who refrains from deceiving his client, on the other hand, would not be so fortunate.

Justice Brown directs our attention to *Andring v. Andring* (1965), 3 Ohio App.2d 417, 32 O.O.2d 543, 211 N.E.2d 59, a case decided before the adoption of the Ohio Rules of Civil Procedure, which states that:

"The general rule of law seems to be that the negligence of an attorney may be imputed to his client when by the exercise of care on the client's part, he would have avoided the consequences of the negligence of his attorney. * * *."  (Citation omitted.)  *Id.* at 420, 32 O.O.2d at 545, 211 N.E.2d at 61.

Under this standard, Justice Brown maintains, Bush's neglect should not have been imputed to him since he himself was not directly at fault.

Such reasoning, however, is plainly inconsistent with the general rule that the attorney's negligence will be imputed to the client regardless of the latter's blameworthiness.  Annotation, Incompetence of Counsel As Ground for Relief From State Court Civil Judgment (1988), 64 A.L.R. 4th 358, Section

4[d]. Indeed, if the client is directly at fault for the dismissal of the case, there is no need to impute any negligence on the attorney's part in the first place. It is significant that the Supreme Court has never endorsed the *Andring* standard despite ample opportunity to do so. *GTE Automatic, Argo Plastic Products,* and *Griffey, supra.* We conclude that the trial court was not obliged to grant relief simply because Justice Brown himself was not directly to blame for the failure to oppose the motion for summary judgment.

While we certainly sympathize with Justice Brown—as we would for any client in this position—vacating the judgment of the common pleas court at this late date would unfairly penalize those parties that have been diligently abiding by the procedural rules as well as set an ominous precedent. *Argo Plastic Products, supra,* 15 Ohio St.3d at 393, 15 OBR at 508, 474 N.E.2d at 331; *Weir, supra,* 26 Ohio App.3d at 38, 26 OBR at 207, 498 N.E.2d at 176. Relief may be sought only against Bush who, by all appearances, is the individual most directly responsible for the denial of Justice Brown's day in court.

This assignment of error is not well taken.

### ASSIGNMENT OF ERROR III

"The trial court under Civ.R. 60(B)(5) erred in not holding that plaintiff-appellant was entitled to relief from the granting of the unopposed summary judgment motion by reason of his counsel's psychological dysfunction and resulting inability to initiate complex legal work."

■ As already detailed, the trial court found that Bush's "neglect" in handling the motion for summary judgment was not "excusable," thereby precluding relief pursuant to Civ.R. 60(B)(1). Justice Brown further argues, however, that relief from judgment is still justified due to Bush's purported psychological ailments by authority of Civ.R. 60(B)(5). That "catch-all" provision states that:

"Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:

" * * *

" * * * (5) any other reason justifying relief from the judgment. * * *"

Justice Brown maintains that Bush was psychologically dysfunctional, rendering him incapable of performing his legal duties. This condition was brought about by deaths and illnesses in Bush's family over the preceding

years. Bush's dilemma was further compounded, we are told, by his unfamiliarity with the rules of procedure governing the courts of this jurisdiction.

■ We are convinced that these claims, if true, could not possibly warrant relief from judgment upon any basis other than "excusable neglect." Civ.R. 60(B)(1). As a result, Justice Brown may not seek to invoke Civ.R. 60(B)(5), since that provision is only available in those rare situations where the other four grounds are not applicable. *Caruso–Ciresi, Inc. v. Lohman* (1983), 5 Ohio St.3d 64, 5 OBR 120, 448 N.E.2d 1365, paragraph one of the syllabus; *Harman v. Chiaramonte* (1987), 39 Ohio App.3d 9, 11, 528 N.E.2d 1270, 1273. Given that the trial court has already determined that Bush's "neglect" was not "excusable," Justice Brown may not circumvent this ruling by resorting to the general catch-all provision.

Regardless, the trial court could reasonably find that Justice Brown failed to prove the facts necessary to warrant relief. Evidence was presented establishing that Bush was engaged in an active legal practice despite his "psychological dysfunction." Indeed, he was able to complete a three-week criminal trial in Michigan during this period. Moreover, no medical testimony or reports were presented to support these claims. Justice Brown's motion was founded predominantly upon Bush's assertions which, one could justifiably conclude, were entirely self-serving.

■ A motion for relief of judgment pursuant to Civ.R. 60(B) requires the trial court, in most instances, to render a factual determination. *Rose Chevrolet, supra,* 36 Ohio St.3d at 20–21, 520 N.E.2d at 566–567. Such findings will not be overturned if they are supported by at least some competent, credible evidence. See, generally, *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus; *Chem. Bank of New York v. Neman* (1990), 52 Ohio St.3d 204, 207–208, 556 N.E.2d 490, 493–495. The record before this court does not require us to conclude that the trial judge abused his discretion in this regard.

■ We further note that there is no merit to Justice Brown's suggestion that relief should be granted since Bush was an out-of-state attorney who was unfamiliar with the procedural rules of this jurisdiction. Attorneys who choose to litigate in Ohio courts are required to familiarize themselves with, and abide by, state and local rules of practice. We will not create exceptions to our procedural standards and time limits to accommodate out-of-state attorneys at the expense of judicial fairness and efficiency. See *Hahn v. McBride* (1913), 88 Ohio St. 511, 103 N.E. 760. In similar fashion, we reject out of hand Justice Brown's argument that the change of judges during the pendency of the motion warranted Bush's belief that he would receive a new

deadline for filing his response. Such expectations are completely unjustified under the laws and customs governing Ohio courts.

This assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

"The trial court erred in refusing to hold that its neglect in serving a copy of the summary judgment order on local counsel Matthew Koch constituted inadvertence justifying relief under Civ.R. 60(B)(1)."

▬ Justice Brown retained an Akron attorney, Matthew J. Koch, to file a motion seeking leave to allow Bush to practice in Ohio for purposes of the lawsuit. Once this request was granted, all documents submitted to the court on Justice Brown's behalf were signed by Bush. Koch, as far as the available record reveals, was no longer actively participating in the proceedings.

Justice Brown does not dispute that Bush was duly served a copy of the trial court's order granting summary judgment in favor of the Beacon Journal. Justice Brown was thereby deemed, by operation of law, to have been notified of the final judgment against him. *Am. Export & Inland Coal Corp. v. Matthew Addy Co.* (1925), 112 Ohio St. 186, 147 N.E. 89, paragraph two of the syllabus. The court fully complied with Civ.R. 58(B) and sufficiently notified all concerned parties of the running of time to appeal. See *Moldovan v. Cuyahoga Cty. Welfare Dept.* (1986), 25 Ohio St.3d 293, 25 OBR 343, 496 N.E.2d 466; *Atkinson v. Grumman Ohio Corp.* (1988), 37 Ohio St.3d 80, 523 N.E.2d 851, paragraph two of the syllabus.

Justice Brown maintains, nevertheless, that Koch should also have been directly advised by the court of the judgment. No rule or other authority is cited which demands notification of *all* attorneys participating, however modestly, in the client's representation. We decline the invitation to judicially mandate such, since doing so would overburden our trial courts with a cumbersome chore of questionable practical value.

This final assignment of error is also overruled. The judgment of the common pleas court is affirmed in all respects.

*Judgment affirmed.*

BAIRD, P.J., and COOK, J., concur.